Nash, J.
 

 In 1801, the Legislature passed an act to punish the crime of bribery at elections. Rev. Stat. ch. 52. sec. 23. The preceding section of the act makes it highly penal for any person, who is a candidate for a seat in the legislature, to give, either directly or indirectly, any money, gift, gratuity, or reward, &c. in order to be elected, and embraces all persons who shall do either of the acts “ to procure any other person to be elected.”— The penalty is a forfeiture of four hundred dollars. The 2Srd sec. forbids
 
 treating
 
 with either meat or liquor, on
 
 any day of election or on any day previous thereto,
 
 with intent to influence the election, under the penalty of two hundred dollars. The 22nd sec. of the act of 1836 is taken from the 11th sec, of the 116th ch. of an act passed in 1777, and the 23rd was originally passed in 1801. The policy of these two acts is the same with that of the British Statute passed in the 7th of William the 3rd, ch. 4th. It is remarkable, that the acts of the General Assembly passed in 1760, and the act of 1877, both omit a provision, contained in the Statute of William, and a most impor
 
 *115
 
 tant one, for the suppression of the offences at which they were aimed. The Stat. of William, among other acts of bribery, enumerated the giving of “ meat, drink, and entertainments, &c.” These are omitted in our acts of 1760 and 1777; but the material words embracing them all are brought forward in the act of 1801. I mention these circumstances to show the anxiety, which the legislature has at different times exhibited, to keep pure the elective principle of our government.
 

 The acts of our assembly bear so striking a likeness to the English Statute, that, although the latter never was in force here, the decisions of the English Courts under it are very safe guides to us. The case of
 
 Rebbans
 
 v.
 
 Crickett,
 
 1 Bos. and Pul. 264, was very similar to the one now under consideration. The 2ad count was for provisions furnished the voters at the request of the defendant, and it was decided the plaintiff could not recover, because the contract was
 
 malum prohibitum,
 
 of a very serious nature in the opinion of the legislature, who had drawn a very strict line, which was not to be departed; from. This doctrine was affirmed in
 
 Lophouse
 
 v.
 
 Wharton,
 
 1 Campb. 550, note; nor is it necessary that the person treating should be the agent of the candidate, or act with his knowledge ; in either case, he, the person treating,is within the provisions of the statute.
 
 Ward
 
 v.
 
 Nanny,
 
 3 Car. and P. 399; 14 E. C. L. R. 369. If a mercer sells ribans, knowing that they are to be distributed among voters, he cannot recover the price.
 
 Richardson
 
 v.
 
 Webster,
 
 3 Car. and P. 128; 14th E. C. L. R. 238 ; and, so, if a candidate pay the expenses of buying out the freedom of voters or pay their travelling expenses, they incur the penalty of the statute. 1st Sel. N. P. page 12.
 
 Bayntun
 
 v.
 
 Cuttle,
 
 1st M. and Rob. 265. Such have been the de< eisions of the Court under the English Statutes, and they are safe guides to us in putting a construction upon our act, if we need any. The language of the act of 1801,
 
 *116
 
 Rev. Stat. ch. 52, sec. 23, is plain and perspicuous : “ If any person shall treat with either meat or drink on the day of election or on any day previous thereto, with intent to influence the election, &c.” It is then illegal to treat at any election for the purpose set forth in the act, and if so, a contract, founded on such act, is illegal and void, and can not be enforced in a Court of justice.— Whether, therefore, the person who gives the bribe, be a candidate or not, or whether he be the agent of one, or whether or not he acts with the knowledge or consent of a candidate, he incurs the penalty of the act, if bis object be to influence the election ; and any contract made by him, with
 
 any
 
 person, for payment of such treating, is null and void. No one, on reading this case, can fora moment doubt the intention, with which the treating was done ; the testimony comes from the plaintiff. The defendant was a candidate for the clerkship of the Superior Court of Currituck County, and during the canvass, requested the plaintiff to let him have “
 
 and to furnish his friends
 
 on public occasions, what liquor and other articles they might want.” Can any one hesitate for a moment, as to the object of the defendant: and can any doubt exist as to the knowledge of the plaintiff of his object and intention. It is true, the plaintiff swore
 
 he
 
 had no intention, in furnishing the articles contained in his account, to influence the election, as he voted against the defendant, and as he furnished the opposing candidate and his friends in a similar way. If this were a suit against the plaintiff, to recover the penalty inflicted by the act, it would become important to enquire into his object and intention in furnishing the liquor and provisions; aud whether he could escape this responsibility by showing, that instead of pandering the to passions of the friends of one of the candidates, he had furnished his efforts to corrupt those who were opposed to him. For the present, our enquiry is not, whether
 
 he-
 
 intended to influence
 
 *117
 
 the election, but whether the defendant did not and whether
 
 he
 
 did not know such to be the fact. The jury were instructed, if thej believed the evidence, the plaintiff was entitled to a verdict. In this there was error. They ought to have been instructed, that, if, from the testimony, they believed it was the intention of the defendant to influence the election by the meat and drink furnished by the plaintiff, and that intention was knowix to the plantiff, the latter could not recover.
 

 If in England the purity of the ballot box is considered so important, how much more sedulously ought it to be guarded hei’e. Upon the virtue and intelligence of the people our Institutions rest; nor can they be endangered, until these principles are lost sight of. The legislature has done its part, and if its enactments ai’e enforced, by those to whom the duty belongs, much may yet be done to give them stability and vigor. And, among the most corrupting pi’actices of candidates for office, is the one we are considei’ing in this case ; it is bribery of the most vicious and destructive tendency, and deserves to find no favor, either in courts of justice or from the people themselves. Whenever the offence is known to exist, the law ought to be rigidly enforced.
 

 For the error in the charge pointed out, the judgment, ought to be reversed and a
 
 venire de novo
 
 awarded.
 

 Peu Cueiam. Judgment reversed and
 
 a venire de novo
 
 awarded.